# EXHIBIT 1

IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
Civil Division

ARLENE GOODMAN,      ]
17 Suffolk Down      ]
Shoreham, NY 11786      ]
      ]
and      ]    Case No.   **0003270-11**
      ]
PATRICIA ANN JOHNSON,      ]
3010 April Lane      ]
Houston, TX 77092      ]
      ]
and      ]
      ]
NANCY ANTOINETTE WOLOWICK and ]
JAMES WOLOWICK,      ]
N90 WI7661 St. Stevens Drive      ]
Menomonee Falls, WI  53051      ]
      ]
     Plaintiffs,      ]
      ]
     v.      ]
      ]
MERCK SHARP & DOHME CORP.,      ]
126 East Lincoln Avenue      ]
Rahway, NJ 07065-4646      ]
    *with service on*      ]
    CT Corporation System      ]
    1015 Fifteenth Street, N.W.      ]
    Suite 1000      ]
    Washington, DC 20005      ]
      ]
    and      ]
      ]
NOVARTIS PHARMACEUTICALS      ]
   CORPORATION,      ]
*a/k/a Novartis Corporation,*      ]
1 South Ridgedale Avenue      ]
Building 122      ]
East Hanover, NJ 07936      ]
    *with service on*      ]
    CT Corporation System      ]
    1015 Fifteenth Street, N.W.      ]
    Suite 1000      ]
    Washington, DC 20005      ]

**RECEIVED**
Civil Clerk's Office
APR 2 9 2011
Superior Court of the
District of Columbia
Washington, D.C.

1

```
Defendants.                    ]
                               ]
```

## COMPLAINT
**(Products Liability – Fosamax/Alendronate and Reclast/Zoledronic Acid;
Punitive Damages)**

### JURISDICTION AND VENUE

1.      Jurisdiction is founded upon 11 D.C. Code §921.

2.      Defendant Merck Sharp & Dohme Corp. ("Merck") is a corporation regularly

doing business in the District of Columbia.

3.      Defendant Novartis Pharmaceuticals Corporation ("Novartis") is a corporation

regularly doing business in the District of Columbia.

### GENERAL FACTUAL ALLEGATIONS

4.      At all times relevant hereto, Merck is or was engaged in the business of

developing, testing, manufacturing, distributing, licensing, labeling, and marketing, either

directly or indirectly, the compound alendronate, sold by Merck under the trade name

Fosamax®.

5.      At all times relevant hereto, Novartis is or was engaged in the business of

developing, testing, manufacturing, distributing, licensing, labeling, and marketing, either

directly or indirectly, the compound zoledronic acid, sold by Novartis under the trade name

Reclast®.

6.      Alendronate and zoledronic acid are part of a class of drugs called

bisphosphonates, which are used to treat bone conditions such as osteopenia, osteoporosis, and

Paget's disease.  There are two classes of bisphosphonates: "N-containing," which are

nitrogenous, and "non-N-containing," which are non-nitrogenous.  Alendronate and zoledronic

acid are nitrogenous bisphosphonates.

2

7.      Merck first sold alendronate in 1995.

8.      Novartis first sold zoledronic acid in 2007.

9.      The femur is considered one of the strongest bones in the body; even in individuals with bone durability problems, breaks in the femur are quite rare.

10.     As early as 2005, Merck was or should have been aware from reports in the scientific literature that alendronate reduces osteoclastic bone resorption, thereby increasing bone mineral density and decreasing bone turnover. Prolonged suppression of bone turnover by alendronate allows accumulation of the small cracks and other microdamage that occurs regularly in bone but would normally be repaired by the body. This damage could create "increased susceptibility to nonspinal fractures that heal poorly." C.V. Odvina, et al., "Severely suppressed bone turnover: a potential complication of alendronate therapy." 90 *J. Clin. Endocrinol. Metab.* 1294–1301 (2005).

11.     Similarly, Novartis knew or should have been aware of the growing body of literature that bisphosphonates like zolendronic acid would, over the long term, allow such microscopic damage to build up in old bone.

12.     By 2006, case reports began appearing in the medical literature showing "unusual" femur fractures in individuals taking bisphosphonates. *See, e.g.*, Jennifer Scheider, "Should Bisphosphonates be Continued Indefinitely? An Unusual Fracture in a Healthy Woman on Long-Term Alendronate," 61 *Geriatrics* 31-33 (2006).

13.     October of 2010, neither Merck nor Novartis made changes to their labeling, package inserts, prescribing information, or other warnings to include information regarding the risk of femur breakage from long-term use of their bisphosphonate products.

3

14.    Mid-shaft femoral fractures such as those suffered by Plaintiffs are of a type now considered "typical" by many medical professionals as caused by long-term exposure to alendronate. *See, e.g.*, Sarah Shock Chan, et al., "Subtrochanteric Femoral Fractures in Patients Receiving Long-Term Alendronate Therapy: Imaging Features," 194 *Am. J. Roentgoenology* 1581 (2010) (showing that alendronate-related femur fractures had distinctive X-ray images).

### FACTS SPECIFIC TO PLAINTIFF ARLENE GOODMAN

15.    On or about the year 1995, Arlene Goodman was prescribed Fosamax® for osteoporosis by her physician.

16.    From 1995 until December of 2010, Arlene Goodman took Fosamax® as directed by her physician.

17.    Arlene Goodman filled all her prescriptions with name-brand Fosamax® manufactured by Merck.

18.    On December 6, 2010, after over fourteen years of taking Fosamax®, Ms. Goodman suffered a fracture of her left femur while engaged in normal movement.

19.    Ms. Goodman's femur fracture occurred without any external cause.

20.    Ms. Goodman's fracture occurred in the shaft of the femur.

21.    Ms. Goodman's femur fracture was caused by her use of Fosamax®.

### FACTS SPECIFIC TO PLAINTIFF PATRICIA ANN JOHNSON

22.    On or about the year 1999, Patricia Ann Johnson was prescribed Fosamax® for osteopenia by her physician.

23.    From 1999 until about the year 2008, Patricia Ann Johnson took Fosamax® as directed by her physician.

4

24.     Patricia Ann Johnson filled all her prescriptions with name-brand Fosamax® manufactured by Merck.

25.     On December 12, 2008, after over eight years of taking Fosamax®, Ms. Johnson suffered a fracture of her right femur while engaged in normal movement.

26.     Ms. Johnson's femur fracture occurred without any external cause.

27.     Ms. Johnson's fracture occurred in the shaft of the femur.

28.     Ms. Johnson's femur fracture was caused by her use of Fosamax®.

### FACTS SPECIFIC TO PLAINTIFFS NANCY AND JAMES WOLOWICK

29.     On or before the year 2002, Nancy Antoinette Wolowick was prescribed Fosamax® for osteoporosis by her physician.

30.     From 2002 to 2008, Nancy Antoinette Wolowick took Fosamax® as directed by her physician.

31.     Nancy Antoinette Wolowick filled all her prescriptions with name-brand Fosamax® manufactured by Merck.

32.     On or about the year 2008, Nancy Antoinette Wolowick's physician caused Ms. Wolowick to switch from taking Fosamax® to taking Reclast®.

33.     The Reclast® received by Ms. Wolowick was manufactured by Novartis.

34.     On November 13, 2010, after six years of taking Fosamax® and two years of treatment with Reclast®, Ms Wolowick's right femur fractured while walking at home.

35.     Ms. Wolowick's femur fracture occurred without any external cause.

36.     Ms. Wolowick's fracture occurred in the shaft of the femur.

37.     Exposure to bisphosphonates, either Fosamax® or Reclast® or some combination thereof, caused Ms. Wolowick's low-impact femur fracture.

## COUNT I
### (Negligent Failure to Test)

38.     All general factual allegations are re-alleged and incorporated by reference.

39.     Given the scientific and other reports available regarding alendronate and other bisphosphonates, Merck and Novartis both had duties to engage in further tests to determine if Fosamax® and Reclast® were safe and effective for long-term use.

40.     Merck and/or Novartis did not conduct sufficient testing to determine the risks of alendronate despite the clear markings in the scientific literature.

41.     As a result of Merck's negligence, Arlene Goodman and Patricia Ann Johnson were exposed to Fosamax® and suffered injury and damages, including but not limited to: broken femurs, incurred costs for medical treatment, pain and suffering, and loss of ability to engage in life activities.

42.     As a result of Merck and/or Novartis's negligence, Nancy Antoinette Wolowick was exposed to Fosamax® and Reclast® and suffered injury and damages, including but not limited to: broken femur, surgery, lost wages, incurred costs for medical treatment, pain and suffering, and loss of ability to engage in life activities.

## COUNT II
### (Negligent Failure to Warn)

43.     All allegations stated in the previous count and all general factual allegations are re-alleged and incorporated by reference.

44.     Merck knew or should have known from independent scientific reports and other sources, including adverse event reports, that alendronate-containing products such as Fosamax®, had a significantly increased risk of femur fracture after long-term use.

45.     Novartis knew or should have known from independent scientific reports and other sources, including adverse event reports, that bisphosphonates such as Reclast® had a significantly increased risk of femur fracture after long-term use.

46.     Merck and Novartis had separate duties to inform Ms. Wolowick's physicians about all potential risks of Fosamax® and Reclast®, respectively.

47.     Both Defendants failed to provide such information and/or warnings, and as a result, Plaintiffs were injured as aforesaid by the respective manufacturers of the products they ingested.

COUNT III
(Strict Liability)

48.     All allegations stated in the previous counts and all general factual allegations are re-alleged and incorporated by reference.

49.     Merck is engaged, or have been engaged, in the business of producing Fosamax®, and is, or has been, a commercial manufacturer of said drug.

50.     Novartis is engaged, or have been engaged, in the business of producing Reclast®, and is, or has been, a commercial manufacturer of said drug.

51.     Nancy Antoinette Wolowick purchased, received, and injested Merck's Fosamax® and Novartis's Reclast® in the same condition as it was when it left the respective Defendant's possession.

52.     Defendants knew, or should have known, that patients and their attending physicians could not realize and could not detect the dangerous and harmful nature of their bisphosphonate drugs.  Clear warnings as to the risk of femoral fractures due to long term use should have been disseminated to overcome Merck's and Novartis's promotions and advertising proclaiming the safety and efficacy of Fosamax® and Reclast®, respectively.

7

53.     As a result of Merck's and Novartis's marketing and promotion of said defective and unreasonably dangerous drugs, Nancy Antoinette Wolowick ingested Fosamax® and was treated with Reclast® and has suffered injury, loss, and damages as aforesaid.

54.     By reason of having marketed and promoted Fosamax® in its defective and unreasonably dangerous condition, Merck is strictly liable to Nancy Antoinette Wolowick, Patricia Ann Johnson, and Arlene Goodman for their injuries, losses, and damages; similarly, Novartis is strictly liable to Nancy Antoinette Wolowick for its promotion of Reclast®.

COUNT IV
(Breach of Warranty)

55.     All allegations stated in the previous counts and all general factual allegations are re-alleged and incorporated by reference.

56.     At all times relevant to this action, Merck promoted and marketed Fosamax® and Novartis promoted and marketed Reclast® with express and implied warranties to both patients and their treating physicians as to the drugs' safety.

57.     Merck and Novartis knew, or should have known, that patients and their physicians were relying on their express and implied warranties.

58.     At all times relevant to this action, Merck knew or should have known that Fosamax® could create a risk of femoral fracture after long-term use. As such, Merck's warranties were false, misleading, and unfounded.

59.     At all times relevant to this action, Novartis knew or should have known that Reclast® could create a risk of femoral fracture after long-term use. As such, Novartis's warranties were false, misleading, and unfounded.

60.     As a result of Merck's breach of these warranties, Arlene Goodman and Patricia Ann Johnson were injured as aforesaid.

8

61.     As a result of Merck's and/or Novartis's breach of these warranties, Nancy Antoinette Wolowick was injured as aforesaid.

## COUNT VI
### (Misrepresentation)

62.     All allegations stated in the previous counts and all general factual allegations are re-alleged and incorporated by reference.

63.     Merck promoted Fosamax® as safe and effective for use despite knowledge of the potential for bone breakage after long-term use.

64.     Novartis promoted Reclast® as safe and effective for use despite knowledge of the potential for bone breakage after long-term use.

65.     At no time did Merck or Novartis take any action to correct the impression that their drugs were safe for long-term use.

66.     Ms. Wolowick's physicians relied on Merck's and Novartis's promotions in prescribing Fosamax® and Reclast® to her, respectively.

67.     As a result of these misrepresentations, Nancy Antoinette Wolowick was injured as aforesaid.

68.     As a result of Merck's misrepresentations, Arlene Goodman and Patricia Ann Johnson were injured as aforesaid.

## COUNT VII
### (Punitive Damages)

69.     All allegations stated in the previous counts and all general factual allegations are re-alleged and incorporated by reference.

70.     Merck exercised substantial control over the design, testing, and labeling of Fosamax®. Merck could have at any time conducted further or made changes in the design or labeling.

71.     Novartis exercised substantial control over the design, testing, and labeling of Reclast®. Novartis could have at any time conducted further or made changes in the design or labeling.

72.     There was no alteration of the Fosamax® or the Reclast® between the time of manufacture and the ingestion by Ms. Wolowick.

73.     The acts of Merck were gross, wanton and intentional in that Novartis, at the time of Ms. Johnson's, Ms. Wolowick's, and Ms. Goodman's purchases and ingestion of Fosamax®, had actual and constructive notice that alendronate could cause femur fractures after long-term use. Nonetheless, Merck knowingly and intentionally promoted Fosamax® as a safe drug, disregarding the published literature that warned of the risks and criticized its efficacy.

74.     The acts of Novartis were gross, wanton and intentional in that Novartis, at the time of Ms. Wolowick's purchase and ingestion of Reclast®, had actual and constructive notice that zoledronic acid could cause femur fractures after long-term use. Nonetheless, Novartis knowingly and intentionally promoted Reclast® as a safe drug, disregarding all warnings of risks and criticisms of its efficacy.

75.     Merck's and Novartis's gross, wanton, and intentional acts led, individually or in concert, to Plaintiffs' injuries as aforesaid.

## COUNT VIII
### (Loss of Consortium)

76.     James Wolowick is the husband of Nancy Antoinette Wolowick, and has been married to Ms. Wolowick for all times relevant to this complaint.

77.     As a result of Ms. Wolowick's injuries caused by the negligence, strict liability, breach of warranty, and misrepresentation of Merck as aforesaid, James Wolowick has been deprived of the love, services, and affection of his wife.

WHEREFORE, Plaintiff Arlene Goodman demands judgment against Merck in the sum of Two Million Dollars ($2,000,000.00), as compensatory damages and the sum of Two Million Dollars ($2,000,000.00) as punitive damages, plus costs.

WHEREFORE, Plaintiff Patricia Ann Johnson demands judgment against Merck in the sum of Two Million Dollars ($2,000,000.00), as compensatory damages and the sum of Two Million Dollars ($2,000,000.00) as punitive damages, plus costs.

WHEREFORE, Plaintiff Nancy Antoinette Wolowick demands judgment against Merck and Novartis in the sum of Two Million Dollars ($2,000,000.00), as compensatory damages and the sum of Two Million Dollars ($2,000,000.00) as punitive damages, plus costs.

WHEREFORE, Plaintiff James Wolowick demands judgment against Merck and Novartis in the sum of One Million Dollars ($1,000,000) as compensatory damages, plus costs.

Respectfully submitted,
AARON M. LEVINE & ASSOCIATES

Benjamin J. Cooper #502149
Aaron M. Levine, #7864
Brandon J. Levine, #412130
Julie T. Oliver-Zhang, #997183
1320 19th Street, N.W., Suite 500
Washington, D.C. 20036
Telephone: (202) 833-8040
Facsimile: (202) 833-8046
aaronlevinelaw@aol.com

Counsel for Plaintiffs

11

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury as to all issues of material fact.

_____

Benjamin J. Cooper